### SEAS SHIPPING CO., Inc. v. UNITED STATES WAR SHIPPING ADMINISTRATION.

United States District Court
S. D. New York.

Feb. 23, 1951.

Barns & Cook, New York City (Winthrop O. Cook, New York City, of counsel), for libelant.

Irving H. Saypol, U.S.Atty., New York City (Gilbert S. Fleischer, New York City, of counsel), for respondent.

COXE, District Judge.

This is a libel under the Suits in Admiralty Act, 46 U.S.C.A. § 745, to recover the sum of $5,576.22, the amount of additional premiums paid by libelant under marine insurance policies upon its vessel, the "Robin Locksley", reimbursement of which, it is alleged, the respondent agreed to make under the provisions of Clause 20 in a time charter party by which it chartered the vessel. The libelant owned a fleet of vessels which it operated on regular runs from ports on the east coast of the United States to ports on the west and east coasts of Africa.

By a telegram to libelant, dated February 27, 1942, the War Shipping Administration advised that it required the use of

the "Robin Locksley" and offered to charter it for about one year. The telegram also provided: "Trading Limits to be World Wide, but marine insurance within Institute Warranties Limits; however have your marine policies provide automatically held covered for world wide trading, premiums for trading beyond Institute Warranties Limits for account Administrator".

Pursuant to this telegram, possession of the vessel was turned over to the Administration as of 7 a.m. on February 28, 1942, and a requisition time charter for about one year, effective as of February 27, 1942, was executed by the parties on or about April 7, 1942, on Contract Form W.S.A.–62. This charter contained the provision "Trading Limits, World Wide", and the provision in Clause 20 that: "The charterer shall reimburse the owner for * * * the actual extra cost of marine insurance occasioned by the vessel's trading beyond the full limits of Institute Warranties in effect on the effective date of the marine insurance carried on the vessel at the time of her delivery, or after the date of any renewal of such insurance occurring during the term or extended term of this charter, beyond such limits, as revised, in effect on the date of any such renewal."

On June 27, 1942 the War Shipping Administration offered to substitute for this charter a new charter on Time Charter Form 101, Warshiptime, as published in the Federal Register on May 16, 1942, to be effective as of February 28, 1942. This new charter differed from the earlier charter in details not now important. The offer was accepted by libelant by telegram on June 29, 1942, and the new charter was executed on April 8, 1943. This new charter provided that it "Supersedes and Cancels Charter No. W.S.A. 62, dated February 27, 1942". It also provided "Trading Limits, World Wide", and contained Clause 20, above, with the additional sentence: "Unless otherwise mutually agreed, the foregoing reference to Institute Warranties shall be deemed to mean 'American Institute Trade Warranties'."

In November and December 1942 the respondent caused the vessel to make a voyage into the Mediterranean Sea from Port Sudan to Malta and return to Mombasa, as part of a voyage on which the vessel left New York on August 16, 1942. On March 20, 1944 libelant paid the sum of $5,576.22 as additional premiums on the policies on the vessel, which it now seeks to recover on the ground that respondent, by sending the vessel into the Mediterranean Sea, caused the vessel to trade beyond the full limits of trading warranties covered by the insurance.

It is stipulated that the Trading Warranty clause in a marine insurance policy defines geographical areas within which the insured vessel may proceed and remain fully covered by the insurance under the premium paid; that the "held covered" clause in a marine insurance policy means that the vessel will be insured under the policy in the event of a breach of warranty as to trade or other matters, provided notice be given to the underwriters of such breach and an additional premium paid; and that under the "held covered" clause in the policies on the "Robin Locksley" libelant was billed for an additional premium to cover this breach of warranty as to trade.

It is also stipulated that, by custom and practice, where the phrase "Institute Warranties" was used in marine insurance policies or charter parties, it referred to the warranties proposed by the London Institute of Marine Underwriters, and that these London Institute Warranties in effect in 1942 did not exclude voyages into the Mediterranean Sea; that the American Institute Trade Warranties were prepared by the American Institute of Marine Underwriters, the members of which write marine insurance; that on March 9, 1942 the Institute recommended to its members for use in their policies the American Institute Trade Warranties, which also permitted trading into the Mediterranean Sea; and that prior to March 9, 1942 the Institute had never issued any Trading Warranties.

Early in 1942 libelant's insurance broker began negotiations with the insurance underwriters to fix the rates and terms for

the renewal of the policies on libelant's fleet, as they would expire during the year, and agreement was reached early in February. On March 5, 1942 libelant renewed for one year the policies on the "Robin Locksley", which expired that day. These policies prohibited trading in the Mediterranean Sea, but contained a "held covered" clause. In the opinion of the broker they were the broadest policies that could be obtained at the time.

It is clear that libelant cannot recover. The term "Institute Warranties" in Clause 20 in the first charter must be held, as stipulated, to refer to the "London Warranties". And Clause 20 in the second charter provides explicitly that the term shall mean "American Institute Trade Warranties". Libelant cannot rely upon either one as the basis for its recovery, for each permitted voyages into the Mediterranean Sea. Libelant's counsel admits in his brief that libelant cannot rely upon either of these Warranties, and then argues that it is obvious from the charter itself that some form of American Trading Warranties was intended, and that the form used by the American Marine Hull Insurance Syndicate, the predominant American market, which excluded trading into the Mediterranean Sea, must have been meant.

This argument is not convincing. There is no indication whatever in the evidence that any warranties, other than the London Warranties or the American Institute Trade Warranties, were ever considered by the respondent, which prepared both charter forms. The evident purpose of Clause 20 was to impose liability upon respondent only for the additional cost of Insurance resulting from the vessel's trading beyond the limits of the London Warranties in the first charter, and, in the second charter, beyond the limits of the American Institute Trade Warranties. Libelant has failed to show that the vessel was caused to trade beyond the limits of either of these Warranties.

There may be a decree for the respondent dismissing the libel, with costs.