INTERNATIONAL SHIP REPAIR
AND MARINE SERVICES,
INC., Plaintiff,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Defendant.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Plaintiff,

v.

INTERNATIONAL SHIP REPAIR AND
MARINE SERVICES, INC., et al.,
Defendants.

Nos. 94–1368–CIV–T–17(E),
94–1844–CIV–T–17(E).

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 21, 1995.

G. Calvin Hayes, Paul E. Parrish, Holland & Knight, Tampa, FL, and U. Charles Remmel, R. Terrance Duddy, and Leland N. Chisholm, Kelly, Remmel & Zimmerman, Portland, ME, for International Ship Repair & Marine Services, Inc.

Timothy Peter Shusta, Hayden & Milliken, P.A., Tampa, FL, John A.V. Nicoletti, Donovan, Parry, Walsh & Repetto, New York City, and Seth S. Holbrook, Clinton & Muzyka, Boston, MA, for St. Paul Fire & Marine Ins. Co.

Allen K. Von Spiegelfeld, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for Dann Ocean Towing and Dann Towing Co.

## ORDER ON MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This action is before the Court on the following motions and responses:

1. International Ship Repair and Marine Services' (hereafter International) motion for summary judgment and supporting memorandum of law, filed June 6, 1995. (Docket No. 53)

2. St. Paul Fire and Marine Insurance Company's (hereafter St. Paul) memorandum in opposition to International's motion for summary judgment, filed August 4, 1995. (Docket No. 57)

3. St. Paul's cross motion for summary judgment and supporting memorandum of law, filed August 4, 1995. (Docket No. 58)

4. International's memorandum, including the affidavits of George Lorton, Carl Lorton, Richard Murdock, Charles Harden, and Robert Heger, in opposition to St. Paul's cross motion for summary judgment, filed September 1, 1995. (Docket No. 70)

5. St. Paul's motion, with memorandum in support, to strike the affidavits of George Lorton, Carl Lorton, and Richard Murdock, filed September 29, 1995. (Docket No. 75)

6. St. Paul's motion, with memorandum in support, to strike the affidavits of Charles Harden and Robert Heger, filed September 29, 1995. (Docket No. 76)

7. International's memorandum in opposition to St. Paul's motion to strike the affidavits of George Lorton, Carl Lorton, and Richard Murdock, filed October 17, 1995. (Docket No. 81)

8. International's memorandum in opposition to St. Paul's motion to strike the affidavits of Charles Harden and Robert Heger, filed October 20, 1995. (Docket No. 84)

9. Affidavit of Clark Travitz submitted by St. Paul in support of its cross motion for summary judgment, filed August 4, 1995. (Docket No. 59)

10. International's motion, with memorandum in support, to strike the affidavit of Clark Travitz, filed September 1, 1995. (Docket No. 69)

11. St. Paul's memorandum in opposition to International's motion to strike the affidavit of Clark Travitz, filed September 13, 1995. (Docket No. 72)

12. Affidavit of John A.V. Nicoletti submitted by St. Paul in support of its cross motion for summary judgment, filed August 4, 1995. (Docket No. 60)

13. International's motion, with memorandum in support, to strike the affidavit of John A.V. Nicoletti, filed August 21, 1995. (Docket No. 66)

14. St. Paul's memorandum in opposition to International's motion to strike the affidavit of John A.V. Nicoletti, filed September 7, 1995. (Docket No. 71)

### FACTS

On October 5, 1993, International purchased a floating dry dock, known as the "CHL2," from Bath Iron Works (hereafter BIW). The CHL2 dry dock and its subsequent loss, are the focus of the present litigation. International purchased two (2) insurance policies from St. Paul, its long time insurance carrier. The policies included a one (1) year "time hull policy" and a voyage policy, which purported to cover any damage to the CHL2 sustained during its trip from Portland, Maine to International's facilities in Tampa, Florida.

The CHL2 began its trip to Tampa on October 18, 1993. However, off the coast of Massachusetts the CHL2 began to list, indicating water in the hull. As a result of the list, International directed the towing company to tow the CHL2 to Boston, Massachusetts. International and an independent marine surveyor inspected the CHL2 and discovered that several bow planks were missing. International filed a claim with St. Paul and expended approximately $835,000.00 to repair the CHL2. St. Paul denied coverage for the repairs and notified International that the CHL2's insurance policies were no longer in effect. International protested St. Paul's denial of coverage and claimed that the original policies were still valid. After the repairs were completed, International hired Dann Ocean Towing, Inc., to tow the CHL2 from Boston to Tampa. During this portion of the trip, the CHL2 encountered a storm and sank in approximately 160 feet of water.

### PROCEDURAL HISTORY

International filed its original complaint against St. Paul in Hillsborough County Circuit Court, alleging two (2) counts of breach of contract. St. Paul removed that action to this Court on the basis of diversity jurisdiction. (Case No. 94–1368–CIV–T–17) International amended its complaint to add one count each of bad faith and tortious breach of statute, and St. Paul filed its answer and affirmative defenses in response. St. Paul's fifth affirmative defense stated that it was not liable because International breached the insurance contract's implied warranty of seaworthiness.

On August 4, 1995, St. Paul filed its instant motion for summary judgment, along with a memorandum and affidavits in support. St. Paul's motion states that it is entitled to summary judgment because the insurance policy is void. According to St. Paul, the policy is void because: (1) International failed to show St. Paul the utmost good faith required in marine contracts; (2) International failed to disclose the CHL2's purchase price; (3) International knew or should have known of the CHL2's deteriorated condition; and (4) International's surveyor misrepresented the scope of the survey that he conducted on the CHL2.

After International initiated the above proceedings, St. Paul filed a declaratory judgment action against International in the United States District Court for the District of Maine. St. Paul amended its complaint once, prior to that action's transfer to this district in November 1994. (Case No. 94–1844–CIV–T–17) St. Paul's amended complaint sets forth three (3) causes of action against International.

St. Paul's first cause of action seeks reimbursement of the $62,500.00 that St. Paul advanced to International when the CHL2 suffered damages during its trip from Portland to Tampa. St. Paul alleges that International's insurance policy does not cover the damages sustained by the CHL2 and therefore, it is entitled to reimbursement of that money.

In its second cause of action, St. Paul seeks a "judgment confirming [its] nonliability to make payment under the policy for the alleged hull damage to the [CHL2]...." St. Paul alleges that the damages sustained by the CHL2 occurred as a result of the dock's unseaworthiness, a risk not covered by the insurance policy.

In its third cause of action, St. Paul "seeks a judgment ... declaring the relevant endorsement to the hull policy null and void, *ab initio,* by reason of International's breach of the implied warranty of seaworthiness...."

The 94–1844 action was consolidated with the 94–1368 action, by order dated February 15, 1995, with all pleadings to be filed in the lower case number file. On June 29, 1995, International filed its instant motion for summary judgment, along with a memorandum and several affidavits in support. International states that St. Paul's claims depend on its ability to prove International breached the warranty of seaworthiness. International states that it did not breach the warranty of seaworthiness because St. Paul admitted that the CHL2 was seaworthy in the insurance policy. Therefore, according to International, it is entitled to summary judgment. Finally, both parties submitted affidavits to support their respective motions for summary judgment, and both filed motions to strike the other party's affidavits.

## MOTIONS TO STRIKE AFFIDAVITS

■ This Court will first address each party's motions to strike affidavits in support of, and in opposition to summary judgment. An affidavit submitted in connection with a summary judgment motion is subject to a motion to strike if it does not measure up to the standards of Rule 56(e) of the Federal Rules of Civil Procedure. *Barnebey v. E.F. Hutton & Co.,* 715 F.Supp. 1512 (M.D.Fla.

1989); 6 *Moore's Federal Practice* P56.22 (1974). According to Rule 56(e), an affidavit must be stricken when it is a conclusory argument rather than a statement of fact, or when the affidavit is not based on personal knowledge. *Interfase Marketing, Inc. v. Pioneer Technologies Group, Inc.,* No. 91–572–CIV–T–17A, 1993 WL 229601, at *5 (M.D.Fla. June 23, 1993); *Galindo v. Precision American Corp.,* 754 F.2d 1212 (5th Cir.1985). Furthermore, if the affidavit is submitted in support of a motion for summary judgment, it must also set forth facts that are admissible in evidence.

■ However, when an affidavit is submitted by the nonmoving party in opposition to a motion for summary judgment, it is unclear in this circuit whether the information it contains must be admissible before a court can consider it. *Compare Church of Scientology Flag Service Org. v. City of Clearwater,* 2 F.3d 1514, 1530 (11th Cir.1993) (stating that based on *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), even if various materials would have been inadmissible at trial "(and we do not hold that they would have been), such materials were appropriately submitted by the non-moving party in opposition to a motion for summary judgment"), *cert. denied,* —— U.S. ——, 115 S.Ct. 54, 130 L.Ed.2d 13 (1994); *and Offshore Aviation v. Transcon Lines, Inc.,* 831 F.2d 1013, 1015 & n. 1 (11th Cir.1987) (per curiam) (stating that an employee's letter, submitted in opposition to summary judgment, should have been considered by the district court even if it was inadmissible hearsay because such a claim "does not undercut the existence of any material facts the letter may put into question." *Celotex* has clearly made a "distinction between evidence admitted for trial and evidence admitted for avoidance of summary judgment"); *with Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 559 (5th Cir. 1980) (holding that inadmissible hearsay cannot be properly used to oppose summary judgment), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981).

In *Church of Scientology,* the Eleventh Circuit Court of Appeals held that the *Pan–*

*Islamic* decision would have to be disregarded in order to give effect to the Supreme Court decision in *Celotex.* *Church of Scientology,* 2 F.3d at 1530–31 & n. 11. Furthermore, the *Church of Scientology* court cited its previous statement in *Offshore Aviation* where it held that "[c]onsideration of the letter does not turn on admissibility at trial but on availability for review." *Id.* at 1530 (citing *Offshore Aviation,* 831 F.2d at 1015). Accordingly, it seems as though the Court, in this circuit, should consider inadmissable evidence in opposition to summary judgment.

However, the Court understands *Celotex* to require information presented in opposition to summary judgment to be substantively admissible, even if the actual form of the information is not. This view is in accord with several other Circuit Courts of Appeals. *See Thomas v. International Business Machines,* 48 F.3d 478, 485 (10th Cir.1995) ("To be sure, the nonmoving party need not produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible.") (citing *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267–68 (7th Cir.1994); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) (stating that hearsay testimony that would be inadmissible at trial, may not be included in an affidavit to defeat summary judgment).

In *Celotex,* the Supreme Court emphasized the importance of granting summary judgment where appropriate as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed. R.Civ.P. 1). If courts allowed parties to raise inadmissible evidence in opposition to a motion for summary judgment, it would severely limit the courts' ability to grant summary judgment. Therefore, courts should avoid considering inadmissible evidence as a practice that is contrary to the purpose behind the Federal Rules of Civil Procedure. *See id.*

Furthermore, this Court finds that requiring the submission of admissible evidence, in opposition to a motion for summary judgment, is in accord with the Federal Rules of Civil Procedure and the Supreme Court's holding in *Celotex.* *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555. In *Celotex,* the Court stated that "[i]n opposing a motion for summary judgment, the nonmovant must make a showing that, if reduced to admissible evidence, would be sufficient to carry the nonmovant's burden of proof at trial." *Id.* This Court understands the Supreme Court to mean that whatever *form* the information takes, it must still be admissible at trial. (emphasis added)

However despite this understanding, the Court is bound to follow what appears to be the precedent set by the Eleventh Circuit. Consequently, this case presents a special problem. Both parties claim that the Court should strike the inadmissible portions of the other party's affidavits. However, the Court must consider all evidence in opposition to a motion for summary judgment. Since both parties submitted several affidavits to support their own motion and oppose the other party's motion, the Court cannot strike the affidavits. Instead, the Court will consider only those portions of the affidavits in support of each party's motion for summary judgment that satisfy Rule 56(e) of the Federal Rules of Civil Procedure. However, when addressing each party's affidavits in opposition to summary judgment, the Court will consider the entire affidavit, including information that would otherwise be inadmissible at trial. As a result, both party's motions to strike will be denied.[1]

## MOTIONS FOR SUMMARY JUDGMENT

### Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

1. The Court reminds both parties that Local Rule 3.01(g) applies to all civil motions not exempted by the Rule, and requires the moving party to confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion. Furthermore, the Rule requires that the moving party file, with the motion, a statement certifying that counsel have conferred and cannot agree on a resolution of the motion. Future failure to comply with Local Rule 3.01(g) will result in the dismissal of the motion.

the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue of material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof.

*Celotex v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. That burden can be discharged by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323, 325, 106 S.Ct. at 2552, 2554. However, the nature of the movant's initial burden "varies depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993).

### Issues on Which Movant Would Bear Burden of Proof at Trial

■ The Eleventh Circuit, sitting *en banc*, interpreted the Supreme Court's holding in *Celotex* to require a movant with the burden at trial, to affirmatively show the absence of a genuine issue of material fact. To do so, the moving party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Celotex*, 477 U.S. at 331, 106 S.Ct. at 2557

(Brennan, J., dissenting). The Eleventh Circuit stated the movant's burden as follows:

> the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact."

*United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir.1991) (citations omitted).

As stated above, once the moving party satisfies its burden; it is up to the nonmoving party to show that a genuine issue of material fact remains. However, if the moving party does not satisfy its burden, the nonmoving party is not required to make this showing and the motion for summary judgment will be denied. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991) (citations omitted).

### Issues on Which Non–Movant Would Bear Burden of Proof at Trial

■ Once the moving party has established the absence of a genuine issue of material fact, to which the nonmoving party bears the burden at trial, it is up to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Material facts are those which will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. at 2510. In determining whether a material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983).

■ In determining whether the nonmoving party has met its burden, the question becomes whether the nonmoving party's evidence could support a reasonable jury finding that the nonmoving party established his burden by the appropriate evidentiary standard of proof that would apply at trial. *Anderson,* 477 U.S. at 254–55, 106 S.Ct. at 2513. However, in determining whether to grant summary judgment, the district court must remember that, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### St. Paul's Cross Motion for Summary Judgment

■ St. Paul's motion for summary judgment attempts to affirmatively prove that International made material misrepresentations, instead of addressing the record's lack of factual evidence with respect to the actual claims by International.[2] According to St. Paul, International's material misrepresentations void the insurance contract and preclude International from being able to prove breach of contract, bad faith, and tortious breach of statute. Therefore, St. Paul is entitled to summary judgment. As evidence of International's misrepresentation, St. Paul states: (1) that International did not show St. Paul the utmost good faith; (2) that International did not disclose the CHL2's purchase price; (3) that International knew or should have known about the CHL2's deteriorated condition and did not inform St. Paul; and (4) that International misrepresented the scope of the survey that it conducted on the CHL2.

St. Paul will have the burden of proving material misrepresentation at trial. Therefore, as the moving party, St. Paul must show that on all the essential elements of its case, no reasonable jury could find for the nonmoving party. *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2557. One of the elements St. Paul must prove in order to succeed on its claim of misrepresentation is that International had knowledge of the facts that St. Paul alleges it failed to disclose. In order to meet its burden of proof on this element, St. Paul introduced evidence tending to show that International knew the CHL2 was not seaworthy. According to St. Paul, International received the CHL2's records as part of the sale. The records contained approximately 2,000 pages and included surveys conducted by the previous owner, detailing the deteriorated condition of the dry dock. From this, St. Paul concludes that International knew that the dry dock was not seaworthy.

Even if St. Paul's evidence was uncontroverted at trial, the Court finds that it would be insufficient to warrant summary judgment. "As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." *Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472 (1991); *Carter v. Thompson,* 808 F.Supp. 1548 (M.D.Fla.1992). However, St. Paul's evidence is controverted. International submitted affidavits stating that it sent several people to inspect the CHL2 before purchasing it, and that it believed the dry dock to be in good condition. By its evidence, International has demonstrated the existence of a triable issue of fact. Therefore, St. Paul's motion for summary judgment will be denied.

### International's Motion for Summary Judgment

■ International also filed a motion for summary judgment on the claims asserted by St. Paul. International's motion for summary judgment, in a similar fashion to that of St. Paul's, does not introduce evidence that questions St. Paul's ability to prove its own claims. Instead, International affirmatively states that there was a seaworthiness admitted clause in the insurance contract, which waived the implied warranty of seaworthiness. As such, International bears the burden of establishing waiver at trial. Furthermore, as the moving party, International must show that, on all the essential elements

---

**2.** St. Paul was granted leave to amend its complaint to add a claim for material misrepresentation by order dated October 31, 1995. There is no prejudice to the parties at this point in allowing St. Paul to raise material misrepresentation in its motion for summary judgment.

of its case, no reasonable jury could find for the nonmoving party. *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2557.

In order to rule on International's motion for summary judgment, the Court would have to determine what the phrase "seaworthiness admitted as between the assured and assurers" means. International claims the phrase waives the implied warranty of seaworthiness, present in all time hull policies. St. Paul, on the other hand, claims that the phrase is used in all dry dock insurance policies because dry docks, by their very design, are not made to be seaworthy in the ordinary sense of the word. St. Paul asserts that "seaworthiness admitted" only waives the warranty with respect to the inherent design and structural instability of the dry dock, and not as International claims, for every defect including wear and tear, or wastage and deterioration.

The interpretation advanced by International—that the phrase represents a wholesale waiver of the warranty of seaworthiness—is a reasonable one. However, the interpretation advanced by St. Paul—that the phrase represents a narrow waiver of the warranty of seaworthiness—is also reasonable. The Court cannot determine from the language of the insurance contract what the parties intended, nor should it attempt to do so. *See Chanel, Inc.,* 931 F.2d 1472 (1991); *Carter,* 808 F.Supp. 1548 (M.D.Fla.1992) (holding that "[a]s a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial"). The Court finds that International produced evidence that, if uncontroverted at trial, would entitle it to a directed verdict. However, the nonmoving party has provided evidence that demonstrates the existence of a triable issue of fact. Accordingly, it is

**ORDERED** that International Ship Repair and Marine Services' motion for summary judgment (Docket No. 53), St. Paul Fire and Marine Insurance Company's cross motion for summary judgment (Docket No. 58), St. Paul Fire and Marine Insurance Company's motion to strike affidavits of George Lorton, Carl Lorton, and Richard Murdock (Docket No. 75), St. Paul Fire and Marine Insurance Company's motion to strike affidavits of Charles Harden and Robert Heger (Docket No. 76), International Ship Repair and Marine Services' motion to strike affidavit of Clark Travitz (Docket No. 69), and International Ship Repair and Marine Services' motion to strike affidavit of John A.V. Nicoletti (Docket No. 66) be **DENIED.**

**DONE AND ORDERED.**