Jane DOE, Plaintiff,

v.

**NORTH RIVER INSURANCE COMPANY, Defendant.**

Case No. 6:08–cv–2075–Orl–35DAB.

United States District Court,
M.D. Florida,
Orlando Division.

April 6, 2010.

Joseph R. Flood, Jr., Dean, Ringers, Morgan & Lawton, PA, Robert Patrick Major, Winderweedle, Haines, Ward & Woodman, PA, Orlando, FL, Stephen A. Marino, Jr., Danya Pincavage, Ver Ploeg & Lumpkin, PA, Miami, FL, for Plaintiff.

Candy L. Messersmith, Rumberger, Kirk & Caldwell, PA, Orlando, FL, Peter G. Thompson, Stephen B. Stern, Thomp-

son, Loss & Judge, LLP, Washington, DC, for Defendant.

## ORDER

MARY S. SCRIVEN, District Judge.

**THIS CAUSE** comes before the Court for consideration of Defendant North River Insurance Company's ("Defendant NRIC") Motion for Summary Judgment (Dkt. 48); Plaintiff's Response in Opposition (Dkt. 54); Plaintiff's Motion for Summary Judgment (Dkt. 50); and Defendant NRIC's Response in Opposition thereto. (Dkt. 55) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court hereby **GRANTS** Defendant NRIC's Motion (Dkt. 48), and **DENIES** Plaintiff's Motion (Dkt. 50), as described herein.

## I. BACKGROUND

### A. Case History

This case arises out of Defendant NRIC's refusal to pay Plaintiff's insurance claims resulting from a $1,106,000.00 default judgment obtained against Defendant NRIC's insured, Edwin Mann. (Dkt. 48 at 2; Dkt. 50 at 1) Defendant NRIC issued an insurance policy ("the Policy") to the City of Orlando, effective October 1, 2000. (Dkt. 48 at 2; Dkt. 50 at 7) Edwin Mann ("Mann"), a former City of Orlando police officer, sexually molested the Plaintiff, who was a minor child at the time, over a period of time beginning October 2000 until April 2001. (Dkt. 48 at 5; Dkt. 50 at 4) Mann later pled guilty to lewd and lascivious battery and lewd and lascivious molestation. (Dkt. 48–4 at 4; Dkt. 50 at 5) In February 2005, Plaintiff sued Mann, the City of Orlando (the "City"), John Smith, and several other individuals for violation of Plaintiff's constitutional rights, intentional infliction of emotional distress, and negligent supervision. (*See Doe v. Mann*, No. 6:05–cv–259–Orl–DAB, Dkt. 5) In that case, the City and John Smith were dis-

missed, Mann refused to answer deposition questions, and the Court ultimately entered a default judgment against Mann. (*Id.* at Dkt. 152; Dkt. 48–6)

Plaintiff filed the present action in state court on April 25, 2008, and the action was removed to this Court on December 11, 2009. (Dkt. 1) Defendant NRIC was added as a party in Plaintiff's Amended Complaint. (*See* Dkt. 2) Plaintiff alleges that Defendant NRIC's Policy issued to the City provides coverage for the $1,106,000.00 award Plaintiff obtained in the underlying action and that Defendant NRIC breached the contract by refusing to pay Plaintiff's claim. (Dkt. 2)

Defendant NRIC answered Plaintiff's Amended Complaint on January 9, 2009, invoking, as affirmative defenses, numerous exclusions under the Policy that preclude coverage of Plaintiff's claim. Additionally, the Defendant defended claiming failure to notify and failure state a claim upon which relief may be granted. (Dkt. 12 at 6–12)

## II. LEGAL STANDARD AND ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir.2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir.2007)). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Evidence is reviewed in the light most favorable to the non-

moving party. *Fennell,* 559 F.3d at 1216 (citing *Welding Servs., Inc.,* 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir.2001) (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1321 (11th Cir.2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific supporting facts have no probative value.").

In the context of cross motions for summary judgement, the denial of one does not require the grant of another. *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.,* 541 F.Supp.2d 1295, 1297 (M.D.Fla.2008) Summary judgment is always inappropriate if disputes remain as to any material facts. *Id.* at 1298.

### B. Contract Interpretation

As noted by the parties, "[t]he interpretation of an insurance contract is a question of law." *Kattoum v. N.H. Indem. Co.,* 968 So.2d 602, 604 (Fla. 2d DCA 2007). It is undisputed that Florida law governs the interpretation of Defendant NRIC's insurance policy in this case. (Dkt. 48 at 9; Dkt. 50 at 8) "Florida law provides that insurance contracts are construed in accordance with the plain language of the poli-

cies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla.2000). Accordingly, the scope and extent of coverage is determined by the language and terms of the policy and the policy terms are given their plain and ordinary meaning. "It is a cardinal principle of insurance law that where the provisions of an insurance policy are clear and unambiguous, the terms of the policy will be accorded their plain meaning and enforced as written." *Ernie Haire Ford,* 541 F.Supp.2d at 1298; see also *Northland Cas. Co. v. HBE Corp.,* 160 F.Supp.2d 1348, 1358 (M.D.Fla.2001) However, if the relevant policy language is susceptible of more than one reasonable interpretation, the policy is considered ambiguous and strictly construed against the drafter of the policy. *Anderson,* 756 So.2d at 34. "[E]xclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Id.* While the insured has the burden of proving that a claim against it is covered by the insurance policy, the insurer has the burden of proving an exclusion to coverage. *LeFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir.1997). However, according to the majority view, the burden of proving an exception to a policy exclusion is on the insured. *Id.*

### C. Defendant NRIC's Policy

Defendant's Policy at issue in the instant litigation states in the Commercial General Liability Coverage Form:

> We will pay ... damages because of "bodily injury" or "property damage" to which this insurance applies.... The "bodily injury" or property damage [must] be caused by an "occurrence"[1]

---

1. Under the Policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. 48–7 at 27)

that takes place in the "coverage territory[.]"

. . .

This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

(Dkt. 48–7 at 17) Similarly, the insurance Policy states that it does not apply to:

[P]ersonal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured[.][or] Loss arising out of any dishonest, fraudulent, criminal or malicious act or omission, committed by any insured [or] arising out of bodily injury, sickness, disease, death, or mental anguish.

(*Id.* at 38, 40, 44) Additionally, the Policy provides:

You must see to it that we are notified as soon as practicable of an act, error, or omission that may result in a claim. Notice should include: (1)[w]hat the act, error, or omission was and when it occurred; [and] (2)[t]he names and addresses of any employee who may suffer damages as a result of the act, error, or omission.

(*Id.* at 42) Accordingly, under the Policy, the Court finds that the City of Orlando, as the insured, had a duty promptly to notify Defendant NRIC of any potential claims and that, notwithstanding any such notification, several Policy exclusions expressly disclaimed Defendant's liability for certain acts committed by the insured. (*See generally* Dkt. 48–7)

In her Amended Complaint, Plaintiff alleges she was "a clearly intended third party beneficiary to The North River Contract" and that Defendant NRIC's contract with the City "provided coverage for the acts of Edwin R. Mann . . . ." (Dkt. 2 at ¶¶ 13–14) In its Motion for Summary Judgment, Defendant contends that, as a matter of law, Plaintiff's claims for relief must fail because they are expressly barred by the exclusionary clauses contained in the Policy. (Dkt. 48 at 8) Specifically, Defendant NRIC contends that it is entitled to summary judgment on the basis that: (1) the Policy does not cover sexual battery claims (Dkt. 48 at 10–12); (2) Plaintiff's injuries do not arise from an "occurrence" (*Id.* at 12); (3) Mann did not act in an insured capacity, and thus his acts are not covered under the Policy (*Id.* at 13–17); (4) even if the insuring agreement covers the underlying award, various exclusions bar coverage; (*Id.* at 18–21); (5) coverage is unavailable because Mann and the City of Orlando failed to comply with certain policy conditions (*Id.* at 21–23); and (6) Florida public policy precludes coverage. (*Id.* at 24–25) In Plaintiff's Motion, Plaintiff seeks summary judgment claiming that her claims are covered under the Policy (Dkt. 50 at 9–15) and that Defendant NRIC cannot assert a late notice coverage defense because it does not contend that it was prejudiced by the late notice of Plaintiff's claims. (*Id.* at 15–19) For the reasons set forth below, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 48) and **DENIES** Plaintiff's Motion for Summary Judgment.

### D. Plaintiff's Claims Pursuant to the Limited Personal Injury Liability Coverage Form

■ In its motion, Defendant asserts that to the extent Plaintiff's claims seek damages for "assault and battery," rape and sexual battery are not covered under insurance policies that cover "assault and battery." (Dkt. 48 at 10) Conversely, Plaintiff contends that she is entitled to recover under the Policy because the Limited Personal Injury Liability Coverage ("LPILC") Form is ambiguous. The Court disagrees.

In *Mason v. Fla. Sheriffs' Self–Ins. Fund,* 699 So.2d 268 (Fla. 5th DCA 1997), the Fifth District Court of Appeals construed nearly identical coverage and exclusion language to determine if rape was covered by the "assault and battery" provision of the policy. *Id.* at 269–70. Specifically, the Fifth District Court of Appeals opined:

> Insurance contracts must be read in light of the skill and experience of ordinary people, and be given their everyday meaning as understood by the man on the street. Since the everyday meaning of battery does not mean rape, the policy should not be construed to cover it. Further, the policy provides coverage for a list of specific acts that does not include rape. Since the inclusion of one thing implies the exclusion of the other,[2] the enumeration of particular covered acts should be construed to exclude all of those not expressly mentioned, including rape.

*Id.* at 270 (citation and quotation marks omitted). In upholding the dismissal of the plaintiff's complaint, the Fifth District Court of Appeals also emphasized that "public policy precludes a holding that there is coverage ... [because] one may not insure against one's own intentional misconduct...." *Id.* Finally, the Court emphasized that the officer's acts were not covered by the policy because sexual batteries are generally outside the scope of employment of a sheriff deputy. *Id.*

Similarly, in *Keen v. Fla. Sheriffs' Self–Ins. Fund,* 962 So.2d 1021 (Fla. 4th DCA 2007), the Fourth District Court of Appeals determined that a law enforcement officer was not acting within the course and scope of his employment when he sexually assaulted the plaintiff, even though he was in uniform at the time of the sexual assault. *Id.* at 1024. There-

fore, the District Court concluded that the sexual assault was not covered under the "assault and battery" provision of the policy. *Id.*

Analogous to the policies at issue in *Mason* and *Keen,* Defendant's LPILC Form states that Defendant will pay damages because of injury sustained by any person arising out of "[e]rroneous service of civil papers, false imprisonment, or assault and battery" committed in the conduct of the named insured's business. (Dkt. 48-7 at 38) The LPILC excludes coverage for "personal injury arising out of willful violation of a penal statute...." (*Id.*) Although Mann illegally and deplorably abused his position as a law enforcement officer to coerce or otherwise elicit sex from a minor child, the Court finds that Mann's molestation of Plaintiff was not within his law enforcement duties. *See Keen,* 962 So.2d at 1023–24; *see also Mason,* 699 So.2d at 270. Further, the Court finds that Defendant's policy excluded coverage for the sexual battery and molestation. Accordingly, Defendant's Motion for Summary Judgment on grounds Mann's sexual battery/molestation was covered under the terms of the LPILC is **GRANTED** and Plaintiff's Motion for Summary Judgment regarding the same is **DENIED.**

### E. Plaintiff's Claims Pursuant to the Commercial General Liability Form

▌ In its motion and response, Defendant asserts that to the extent Plaintiff's claims seek coverage under the Commercial General Liability ("CGL") Form, the Policy only provides coverage for "bodily injury" that is a result of an "accident" and that child molestation can never be an "accident" for purposes of insurance coverage. (Dkt. 48 at 18; Dkt. 55 at 5–7)

**2.** The cannon of construction expressio unius est exclusio alterius applies to contracts as

well as statutes. *Thomas v. Prudential Prop. & Cas.,* 673 So.2d 141 (Fla. 5th DCA 1996).

Conversely, Plaintiff contends that she is entitled to recover under the Policy because the term "accident" must be construed to include "intentional act[s] by Mann that resulted in unexpected or unintended injuries or damages to Doe." (Dkt. 50 at 14; *see also* Dkt. 54 at 6–10) The Court disagrees.

Here, it is undisputed that Mann sexually molested Plaintiff while he was employed as a sex crimes investigator with the City of Orlando Police Department and that this unlawful molestation served as the basis of Plaintiff's claims in the underlying civil action against Mann and the City. (Dkt. 48 at 5–7; Dkt. 50 at 4–6) In *Allstate Ins. Co. v. Bailey*, 723 F.Supp. 665 (M.D.Fla.1989), the district court addressed whether the molestation of a minor child was covered under the accidental loss provision of the plaintiff's insurance policy. *Id.* at 669. The policy at issue in *Bailey* covered losses "from an accidental loss ... because of bodily injury ... covered by this part of the policy[,]" but expressly excluded coverage for "bodily injury ... which may reasonably be expected to result from the intentional criminal acts of an insured person which are in fact intended by an insured person." *Id.* at 667. Similarly, the Florida Supreme Court has determined what constitutes an "accident" under the terms of an insurance liability policy, reasoning:

> In many cases the question of whether the injury or damages were unintended or unexpected will be a question of fact; in some cases, the question will be decided as a matter of law, such as in cases where the insured's actions were so inherently dangerous or harmful that injury was sure to follow. *See, e.g., Landis v. Allstate Ins. Co.*, 546 So.2d 1051 (Fla. 1989) (harm always results from sexual abuse so that any intent to commit abuse necessarily carries with it an intent to commit harm).

*State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla.1998).

Analogous to the policy at issue in *Bailey*, Defendant's CGL policy covers accidental injuries, namely "bodily injury" only if it is caused by an "occurrence" that takes place in the "coverage territory[.]" (Dkt. 48–7 at 17) The CGL defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. 48–7 at 27; Dkt. 48–7 at 38) The Public Officials and Employees Liability Insurance Endorsement, which modifies insurance provided under the CGL, contains additional Policy exclusions. (Dkt. 48–7 at 44) Specifically, the Endorsement excludes any claim arising out of "bodily injury, sickness, disease, or mental anguish" or "for an injury arising from false arrest, assault or battery, detention, imprisonment, malicious prosecution, or abuse or [sic] process." (*Id.*) As discussed, *supra*, the Court finds that sexual molestation is not covered under the "assault and battery" provision of the Policy. Moreover, the Court finds that the sexual molestation that serves as the basis for the underlying damage award is not an "accident" as contemplated under the Policy because intentional child molestation is no accident and cannot be considered unintended as a matter of law. *See Landis*, 546 So.2d at 1053; *see also Bailey*, 723 F.Supp. at 669. Accordingly, Defendant's Motion for Summary Judgment that the Court determine that the sexual battery/molestation is not covered under the terms of the CGL Form is **GRANTED**, and Plaintiff's Motion for Summary Judgment on this issue is **DENIED**.

### F. Plaintiff's Claims Pursuant to the Business Auto Liability Coverage Form

In its motion, Defendant asserts that, to the extent Plaintiff's claims seek

coverage under the Business Auto Coverage ("BAC") Form, Plaintiff cannot show as a matter of law that the award in the underlying action was due to an "accident" since child molestation is never an "accident." (Dkt. 48 at 11) The Court has already addressed whether child molestation can be considered an "accident" under the Policy in Part E, *supra.* The Court next considers whether Mann was acting in an insured capacity at the time of the molestation and finds that he was not. Defendant contends that Mann did not act in an insured capacity when he molested Plaintiff in his patrol car while on duty. (Dkt. 48 at 13–17) In Response and in her own Motion for Summary Judgement, Plaintiff contends that coverage exists for her claims under the BAC because "during the relevant time periods he [Mann] was a police officer employed by the Orlando police Department, and he used police cruisers ... with the City's ... permission." (Dkt. 50 at 9–10; *see also* Dkt. 54 at 10–11)

Additionally, Plaintiff contends that because Mann defaulted in the underlying case, the uncontested allegations must be accepted as true. (Dkt. 50 at 9–11; Dkt. 54 at 11) Specifically, in the complaint in the underlying case, Plaintiff alleged that Mann's occupation was related to her injury because (1) Doe and her family trusted Mann more because he was a police officer; (2) Mann threatened Doe and her family with reprisal if they reported him; (3) Mann molested Doe while he was on duty and in his official police vehicle; and (4) Mann's job as a sex crimes detective triggered repressed psychological trauma in Mann which caused him to prey on Doe. (Dkt. 48–4 at 7) Each of the parties' contentions are addressed in turn.

A review of the BAC provision under which Plaintiff seeks recovery is helpful to resolve whether Plaintiff's claims are covered under the BAC. Defendant's BAC includes coverage for the following:

[A]ll sums an "insured" must pay as damage because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto."

(Dkt. 48–7 at 7) Under Florida law, an injury does not arise out of the ownership or use of an automobile simply because an injury occurred in the automobile as there must be a causal connection between the vehicle and the injury for coverage to apply. *Blish v. Atlanta Cas. Co.,* 736 So.2d 1151, 1154 (Fla.1999). Courts consider the following factors to determine a causal connection: (1) whether the injury is a reasonably foreseeable consequence of the ownership of the vehicle; (2) whether the accident or injury arose out of the inherent nature of the automobile; and (3) whether the automobile itself produced the injury. *Id.; see also Race v. Nationwide Mut. Fire Ins. Co.,* 542 So.2d 347, 349–51 (Fla. 1989). Applying those factors to the instant case, the Court finds that (1) sexual molestation is not a reasonable consequence of ownership or use of a vehicle; (2) that sexual molestation is not the type of injury that is caused by the inherent nature of an automobile; and (3) that an automobile cannot itself produce or cause sexual molestation. *See Race,* 542 So.2d at 349; *see also Farrer v. U.S. Fid. & Guar. Co.,* 809 So.2d 85, 95 (Fla. 4th DCA 2002) (holding that under the *Race* factors, the sexual assault claim was excluded because it did not arise out of use of the vehicle). Because there is no causal connection between the vehicle and Plaintiff's injuries, coverage for Plaintiff's claims is unavailable under Defendant's BAC.

Generally, sexual batteries are outside the scope of employment. *Mason,* 699 So.2d at 270. In *Mason,* the Fifth District Court of Appeals squarely addressed the issue of whether a sexual battery was outside the scope of employment, stating:

Deputy McNally's actions were not in furtherance of the purpose of serving his employer, the sheriff, and we do not find a causal relationship between the duties of a deputy sheriff and the commission of a sexual battery to serve the sheriff.... Even though McNally was on duty, in uniform, and charged with the responsibility of serving a warrant, in no way did he have the authority to use his power to coerce sex. Because there was not even the pretense of lawful right in McNally's performance of this act, it was not within the scope of his employment. ·

*Id.; see also Keen*, 962 So.2d at 1024 (concluding that the officer's "law enforcement duties ended when he coerced ... sex ... [and] [t]herefore, the sexual assault was not within law enforcement duties and was not covered" by the insurance plan). In light of *Mason* and *Keen*, the Court finds that Mann was not acting during the course and scope of his employment when he sexually molested Plaintiff.

 Finally, Plaintiff appears to allege that Mann's sexual battery of Doe is covered as an incident growing out of or "caused" by his law enforcement duties, and, therefore, is a covered event. (Dkt. 50 at 9–11; Dkt. 54 at 10–11) Because it is undisputed that Mann molested Plaintiff in his police cruiser while he was in uniform (Dkt. 48 at 6–7; Dkt. 50 at 4) and because "Mann's employment as a sex crimes investigator ... [and] a personal history of sex abuse, made it more likely that he would engage in an improper relationship with a teenage girl," Plaintiff claims that Mann acted in an insured capacity. (Dkt. 54 at 11) Even if the Court accepts these allegations as true on the basis of the default, the Court, nonetheless, rejects this notion. Mann's exposure to sexually explicit material via his position as a sex crimes detective and his propensity to commit sexual battery due to his history of abuse do not dictate or even support a

finding that his conduct was performed in the course and scope of his duty. Accordingly, Defendant's Motion that the Court find that Mann was · acting outside the scope of his employment so as to exclude coverage under the terms of its BAC is **GRANTED,** and Plaintiff's Motion for Summary Judgment regarding the same is **DENIED.**

### G. Effect of Late and/or Delayed Notice

Defendant argues that any of the Court's findings in the underlying action are not binding in the present case because it did not receive notice of the underlying action until after default judgment was entered against Mann and thus never had an opportunity to participate in the underlying case. (Dkt. 48 at 14) Further, Defendant argues that it was severely prejudiced by the City of Orlando and Mann's failure promptly to notify it of the underlying suit, and thus coverage is not available for any of Plaintiff's claims. (*Id.* at 21–22) Plaintiff contends that Defendant cannot assert a late notice coverage defense because it failed to establish any prejudice as a result of the late notice received and alternatively, because Defendant has not yet denied any of Plaintiff's claims by taking the position that there is no coverage, Defendant has waived its late notice defense. Having concluded that there is no coverage for Plaintiff's claims under any of the coverage Forms or provisions cited by Plaintiff in her Motion, the Court need not address the applicability of a late notice defense to the instant case. Accordingly, the parties' cross motions for summary judgment on this issue are **DENIED as moot.**

### III. Conclusion

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. The parties' cross Motions for Summary Judgment (Dkts. 48, 50) as to the notice issue are **DENIED as moot;**

2. Defendant's Motion for Summary Judgement (Dkt. 48) is **GRANTED** in all other respects, as detailed in this Order;

3. Plaintiff's Motion for Summary Judgment (Dkt. 50) is **DENIED** in all other respects, as detailed in this Order; and

4. The **CLERK** is directed to **TERMINATE** all pending motions and **CLOSE** this case.