[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 13-11416 & 13-12259
_____

D.C. Docket No. 1:11-cv-21163-JG


ALBERTO LAMADRID,
MIAMI YACHT CHARTERS, LLC,

Plaintiffs - Counter Defendants -
Counter Claimants - Appellants,

versus

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

Defendant - Counter Claimant -
Counter Defendant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(May 22, 2014)

Before MARTIN and DUBINA, Circuit Judges, and DUFFY,[*] District Judge.

PER CURIAM:

Alberto LaMadrid ("LaMadrid") and Miami Yacht Charters, LLC ("Miami Yacht") (collectively "Appellants") appeal the District Court's grant of summary judgment in favor of National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union").  In this appeal, we must determine the scope of the coverage provided by an all-risk marine insurance policy.  More specifically, we are presented with the question of whether Appellants, insureds under the policy at issue, met their burden of establishing an accidental or fortuitous loss based on the undisputed facts.  We answer this query in the affirmative, and thus, reverse the District Court's entry of summary judgment in favor of National Union.

## I.  BACKGROUND

### A.  FACTUAL BACKGROUND

This action arises out of a coverage dispute regarding an all-risk marine insurance policy.  Appellants own an 85-foot Broward Motor Yacht, the "Alicia," which is powered by two turbo-charged Detroit Diesel 12v71 engines.  The Alicia is covered by an all-risk Recreational Marine Policy ("Policy") issued by National Union to Appellants, under which Miami Yacht and LaMadrid are the named insureds.  In 2010, LaMadrid and his family were returning to Miami from a

---

[*] Honorable Patrick Michael Duffy, United States District Judge for the District of South Carolina, sitting by designation.

voyage to the Bahamas when LaMadrid observed black smoke flowing from the exhaust of the starboard engine.  After the Alicia's captain reduced the vessel's speed, LaMadrid proceeded to the yacht's engine room, where he observed grayish smoke emanating from the air filters and valve covers.

Upon the Alicia's safe return to Miami, LaMadrid, who owns and operates Miami Yacht and Engine Works, enlisted his mechanics, as well as other individuals and entities, to examine the yacht in hopes of determining the cause of the smoke.  Following unsuccessful attempts to identify the cause of the engine failure and to repair the engine, LaMadrid concluded that the starboard engine was beyond repair and subsequently reported a claim to his insurance agent.

After receiving the report of the loss, National Union dispatched its investigator, Stewart Hutcheson, to examine the vessel.  However, given the post-loss condition of the starboard engine, Hutcheson was unable to identify or arrive at a conclusion regarding the cause of the loss and merely assumed that the engine's failure was due to wear and tear and corrosion.  Based on Hutcheson's opinion, National Union denied coverage, citing only the Policy's wear and tear exclusion.[1]  Appellants retained Mirkos Pichel to inspect the yacht's starboard engine, as well as any remnants thereof, and to prepare a report offering his

---

[1] The Policy's wear and tear exclusion is not at issue on appeal.  In fact, for purposes of summary judgment and this appeal, National Union concedes that the testimony of Appellants' expert, Mirkos Pichel, rules out wear and tear, as well as lack of maintenance, as possible causes of the loss.

3

opinions on the cause of the loss.  Pichel concluded that the cause of the starboard engine's failure was a relief valve in the oil system that was fixed in the open position.[2]  In light of National Union's denial of coverage, this action and appeal followed.

## B.  PROCEDURAL HISTORY

On February 2, 2011, Appellants filed a single-count Complaint against National Union in Florida state court seeking to recover under the Policy.  The action was subsequently removed to the United States District Court for the Southern District of Florida on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  Concurrently with removal, National Union answered Appellants'

---

[2] Additionally, at the hearing on Appellants' Rule 59(e) Motion to Alter or Amend Judgment, the court set forth, and the parties agreed to, a series of relevant and undisputed facts upon which the lower court based its legal rulings.  The stipulated factual recitation is as follows:

First of all, the insured vessel, in particular, the starboard engine suffered damage.  The plaintiff's expert, Mr. [Pichel], determined that the cause of the damage to the starboard engine was the relief valve being stuck in the open position, and that caused the engine to lose oil pressure which in turn caused the overheating of the piston and related parts which caused the damage in this case.

This particular starboard engine had been rebuilt in 2007.  An engine like that should have lasted about 10 to 15 years with about 2,500 to 3,500 hours of use following the rebuilding, but at the time of this particular damage, the engine had less th[a]n 750 hours of use.

Although Mr. [Pichel] determined that a stuck relief valve in the open position caused the damage, he could not say or opine why the relief valve was stuck in the open position.  He simply didn't know.

Ultimately, National Union's expert, Mr. [Hutcheson], had the opportunity to examine the relief valve and he, too, could not determine why the relief valve was stuck in the open position, and Mr. [Pichel] testified that he saw no evidence of wear and tear during his inspection of the engine.

(ECF No. 174, at 4–5.)

4

Complaint, denying, *inter alia*, that the vessel's damage was the result of a covered peril under the Policy.[3]

On April 29, 2011, the parties consented to the full jurisdiction of a Magistrate Judge with respect to all matters before the District Court, including trial. Shortly thereafter, the parties filed cross-motions for summary judgment. The opposing motions were fully briefed. Following an evidentiary hearing at which the parties' experts testified, and after additional briefing at the lower court's request, the court issued an Omnibus Order denying the parties' respective motions for summary judgment, as well as National Union's Motion to Strike the Affidavit and Deposition Testimony of Plaintiff's Expert Witness, Mirkos Pichel.

National Union timely filed a Motion for Reconsideration of the Court's Order Denying Defendant[']s Motion for Summary Judgment ("Motion for Reconsideration"). After full briefing, the lower court entered its Order Granting Defendant's Motion for Reconsideration ("Order Granting Reconsideration"), reversing its previous Omnibus Order, and in turn granting National Union's Motion for Summary Judgment and dismissing Appellants' claim with prejudice.

Final Judgment was entered upon the Order Granting Reconsideration in favor of National Union. Appellants thereafter filed a Rule 59(e) Motion to Alter or Amend Judgment, seeking reversal of the Final Judgment and the Order

---

[3] National Union also asserted a number of affirmative defenses; however, these defenses, as well various policy exclusions, are not at issue on appeal.

5

Granting Reconsideration, as well as requesting the entry of summary judgment in Appellants' favor. After extensive supplemental briefing and a hearing, the District Court denied Appellants' Rule 59(e) Motion.

Appellants timely noticed their appeal of the decision on the merits.[4] On April 23, 2013, the District Court entered an order awarding National Union its taxable costs, following which Appellants filed a second notice of appeal, specifically appealing the award of costs. On May 28, 2013, Appellants moved to consolidate the two appeals, and this Court entered an Order granting the requested consolidation on July 29, 2013.

## II.  DISCUSSION

### A.  STANDARD OF REVIEW

Because summary judgment involves pure legal determinations, we review the District Court's grant of summary judgment *de novo*, applying the same legal standards as the District Court. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004). Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[4] At oral argument, Appellants stated that the lower court order from which they appeal is the order granting summary judgment in favor of National Union. Appellants' first Notice of Appeal, however, indicates they are appealing the District Court's November 30, 2012 entry of Final Judgment, entered upon the court's November 29, 2012 Order Granting Reconsideration, which was thereafter made final by the court's March 4, 2013 Order denying Appellants' Rule 59(e) Motion . Notwithstanding the complex procedural history, it is clear that Appellants seek relief from the District Court's entry of summary judgment in favor of National Union.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

## B.  ANALYSIS

### 1.    Governing Law

Prior to addressing the substantive question raised on appeal, we first confront the issue of whether Florida law or federal maritime law governs the instant dispute. *Morrison Grain Co. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 428 (5th Cir. 1980).[5] Notwithstanding the extensive briefing, the parties' positions on this issue are less than clear.  However, both because the parties themselves failed to squarely address this issue and because we find that the inquiry is without consequence to the outcome of this appeal, "we need not be stranded long on this legal shoal." *Id.*

Initially filed in Florida state court, this action was removed to federal court on the basis of the diversity of the parties.[6]  Although claims concerning marine insurance contracts may be maintained in federal court under diversity

---

[5] In *Bonner* v. *City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the Fifth Circuit handed down prior to October 1, 1981.

[6] While, under a traditional *Erie* analysis, Florida law would govern the interpretation of an insurance policy or provision, the parties here have not expressly agreed as such and instead largely rely on federal maritime law in seeking to interpret the Policy.

7

jurisdiction,[7] "[f]ederal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law." *All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000); *see Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955) ("Since the insurance policy here sued on is a maritime contract[,] the Admiralty Clause of the Constitution brings it within federal jurisdiction." (citing *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. (11 Wall.) 1 (1870))); *see also St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1184 (11th Cir. 2009) ("It is well settled that cases involving marine contracts give rise to admiralty jurisdiction."); *Morrison Grain Co.*, 632 F.2d at 428 n.4 ("It is well settled that a marine insurance policy is a maritime contract within federal admiralty jurisdiction." (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961); *Dunham*, 78 U.S. (11 Wall.) at 33–34; *Irwin v. Eagle Star Ins. Co.*, 455 F.2d 827, 829 (5th Cir. 1972))). However, merely because actions involving marine insurance contracts may fit within federal admiralty jurisdiction, "it does not follow . . . that every term in every maritime contract can only be controlled by some federally defined admiralty rule." *Wilburn Boat Co.*, 348 U.S. at 313.

-----

[7] *See Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 359 n.2 (1962) ("Suits on maritime contracts may be brought in the federal courts under the head of diversity jurisdiction." (citing *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406 (1953); *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955))).

To the contrary, the Supreme Court held in *Wilburn Boat Co.* that in the absence of a controlling rule of federal maritime law, the interpretation or construction of a marine insurance contract is to be determined according to state law. *See id.* at 321; *see also All Underwriters*, 222 F.3d at 1313 (discussing *Wilburn Boat Co.*). In such instances, "when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." *All Underwriters*, 222 F.3d at 1312 (quoting *Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co.*, 207 F.3d 1247, 1251 (11th Cir. 2000) (internal quotation marks omitted)); *see also Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir. 1986) ("One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and, if there is no such admiralty principle, consideration must be given to whether such an admiralty rule should be fashioned. If none is to be fashioned, the state rule should be followed."). Accordingly, this Court has recognized that "admiralty courts will generally look to appropriate state law in determining questions involving a marine insurance contract." *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985) (citing *Wilburn Boat Co.*, 348 U.S. at 315–21; *Irwin*, 455 F.2d 827).

9

Notwithstanding the analytical approach outlined in *Wilburn Boat Co.* and its progeny with regard to the governing law, we need not decide this issue today, as our precedent makes clear that Florida law and federal maritime law are not materially different with regard to the narrow question presently before the Court. *See Morrison Grain Co.*, 632 F.2d at 429; *see also Banco Nacional De Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 n.3 (11th Cir. 1982) ("*Morrison* itself expressly holds that federal maritime law governs the burden of proof issue, and *Morrison*'s exposition is the most recent exposition of maritime law on this question. Therefore, it is clear that *Morrison* is applicable here. *Morrison* also notes that Florida law is not materially different from maritime law with respect to this issue."). Therefore, we turn now to the substantive issue before the Court.

2.    Summary Judgment

Since the parties have stipulated to the relevant facts, we are faced with only one question on appeal: whether the District Court correctly interpreted or construed the Policy to preclude coverage in this instance. More precisely, we must determine whether Appellants, insureds under the all-risk marine insurance policy, met their burden of establishing an accidental and fortuitous loss. The interpretation of an insurance contract is a matter of law subject to *de novo* review. *St. Paul Fire & Marine Ins. Co.*, 561 F.3d at 1189 n.17 (citing *Ohio Cas. Ins. Co. v. Holcim (US), Inc.*, 548 F.3d 1352, 1356 (11th Cir. 2008)); *see also Adelberg v.*

10

*Berkshire Life Ins. Co.*, 97 F.3d 470, 472 (11th Cir. 1996) ("[T]he interpretation of the provisions of an insurance contract is a matter of law to be decided by the court."), *certified question accepted*, 689 So. 2d 1068 (Fla. 1997), and *certified question answered*, 698 So. 2d 828 (Fla. 1997). "However, as a reviewing Court we must view each contract in the light of the setting of the parties and their reasonable expectations as to risks and protection against them, and an insurance policy in such a way as to effectuate its purpose." *Morrison Grain Co.*, 632 F.2d at 429–30 (footnotes omitted); *see Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1456 (11th Cir. 1989) (citing Fla. Stat. Ann. § 627.419(1) (West 1986); *Haenal v. U.S. Fid. & Guar. Co. of Balt.*, 88 So. 2d 888 (Fla. 1956)); *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 891 (M.D. Fla. 1996).

The parties recognize and agree that the Policy at issue is an all-risk policy of marine insurance. "An all risk policy is one which provides coverage against all risks . . . covering every loss that may happen except by the fraudulent acts of the insured." *Int'l Ship Repair & Marine Servs., Inc.*, 944 F. Supp. at 891–92 (citing *Morrison Grain Co. v. Utica Mutual Ins. Co.*, 446 F. Supp. 415, 420 (M.D. Fla. 1977), *aff'd in part, remanded in part*, 632 F.2d 424 (5th Cir. 1980)). Indeed, such a policy "creates a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed

11

for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Dow Chem. Co. v. Royal Indem. Co.*, 635 F.2d 379, 386 (5th Cir. 1981) (citations omitted).

In order to recover under an all-risk policy of marine insurance, the insured must first "show that a loss arose from a covered peril." *Morrison Grain Co.*, 632 F.2d at 429 (citing *S. Felicone & Sons Fish Co. v. Citizens Cas. Co. of N.Y.*, 430 F.2d 136 (5th Cir. 1970); *Nw. Mut. Life Ins. Co. v. Linard*, 498 F.2d 556 (2d Cir. 1974)). The property damage coverage section of the instant Policy states that National Union "will provide coverage for accidental, direct physical loss or damage to [the] insured vessel as well as salvage charges except as specifically excluded in this policy."[8] (ECF No. 70-2, at 4.) The parties correctly acknowledge that coverage for "accidental" loss or damage to the vessel includes, and is synonymous with, "fortuitous" loss,[9] unless such loss is subject to an exclusion. Accordingly, in an action such as this to recover under an all-risk

---

[8] The Policy includes an exclusion for, *inter alia*, wear and tear and gradual deterioration. However, as noted *supra*, for purposes of summary judgment and presently on appeal, National Union did not and does not dispute the testimony of Appellants' expert, which rules out wear and tear and lack of maintenance as causes of the loss.

[9] As noted by the court in *Morrison Grain Co.*, 632 F.2d 424, the Restatement (First) of Contracts defines a "fortuitous event" as:

> an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, as the loss of a vessel, provided that the fact is unknown to the parties.

*Id.* at 430–31 (quoting Restatement (First) of Contracts § 291 cmt. a (1932)).

policy such as the one presently at issue, the insured must necessarily demonstrate that the damage or loss was fortuitous. *E.g.*, *Morrison Grain Co.*, 632 F.2d at 430 & n.18. Notably, this "burden of demonstrating fortuity is not a particularly onerous one." *Id.* at 430; *see Int'l Ship Repair & Marine Servs., Inc.*, 944 F. Supp. at 893 ("[T]he burden of demonstrating a fortuitous event is not an onerous one."); *Egan v. Wash. Gen. Ins. Corp.*, 240 So. 2d 875, 876 (Fla. Dist. Ct. App. 1970) ("Plaintiff's burden of proof under such a policy is a light one: to make a prima facie case for recovery, he must show only that a loss has occurred."). In recognition of this "light" and "not particularly onerous" burden, "courts which have considered the question have rejected the notion that the insured must show the *precise cause* of loss to demonstrate fortuity." *Morrison Grain Co.*, 632 F.2d at 431 (emphasis added); *see also Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 84 (2d Cir. 2002) (noting that insured "needs only to show a fortuitous loss; it need not explain the precise cause of the loss"); *British & Foreign Marine Ins. Co. v. Gaunt*, [1921] 2 A.C. 41, 47 ("[Insured] is not bound to go further and prove the exact nature of the accident or casualty which, in fact, occasioned his loss.").

Nevertheless, here the District Court required Appellants to do just that— prove the precise cause of the starboard engine's failure. In granting National Union's Motion for Reconsideration and entering summary judgment in its favor,

the District Court emphasized that Appellants, relying upon the testimony of their expert, would not be able to demonstrate why the relief valve was fixed, or stuck, in the open position.  The District Court thus concluded that that "there will be no evidence at trial to establish that a fortuitous event is the cause of the damage to the relief valve."  (ECF No. 151, at 6.)  By requiring Appellants to pinpoint "why" the relief valve failed, the District Court, in essence, required Appellants to demonstrate the precise cause of the starboard engine's failure in order to meet their burden of establishing a fortuitous loss.

We however find, based on the undisputed facts, that Appellants met their burden of demonstrating a fortuitous loss.  More particularly, Appellants carried this light burden by presenting expert testimony on the cause of the engine's failure, namely the failure of the relief valve, and by establishing that the unexplained loss occurred well before the end of the engine's projected lifespan. To require Appellants to prove something more, such as the exact cause of the relief valve's failure, would be to require the insureds to prove the precise cause of the engine's failure or, stated otherwise, the "cause of the cause" of the loss. Requiring an insured to prove that a loss arose from a covered peril with such specificity seems contrary to the aims of an all-risk insurance policy.  Indeed, the court in *Morrison Grain Co.* recognized as much, stating that "[i]t would seem to be inconsistent with the broad protective purposes of 'all risks' insurance to

14

impose on the insured . . . the burden of proving the precise cause of the loss or damage." 632 F.2d at 430; *see also B & S Assocs., Inc. v. Indem. Cas. & Prop., Ltd.*, 641 So. 2d 436, 437 (Fla. Dist. Ct. App. 1994) (citing and adopting the reasoning of the court in *Morrison Grain Co.*).

Additionally, we find it persuasive that National Union did not specifically exclude mechanical failures such as this from coverage under the Policy. *See Atl. Lines Ltd. v. Am. Motorists Ins. Co.*, 547 F.2d 11, 13 (2d Cir. 1976) (noting that "[c]arriers which do not wish to insure against this broad risk customarily incorporate an exclusionary clause in their policies exempting from coverage unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory") (internal citation and quotation marks omitted)); *cf. Doe v. N. River Ins. Co.*, 719 F. Supp. 2d 1352, 1355 (M.D. Fla. 2010) ("[I]f the relevant policy language is susceptible of more than one reasonable interpretation, the policy is considered ambiguous and strictly construed against the drafter of the policy." (citing *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000))); *Aetna Ins. Co. v. Webb*, 251 So. 2d 321, 322–23 (Fla. Dist. Ct. App. 1971) ("It is to be borne in mind that the language of the policy is the language prepared by the draftsman for the insurance company, and if the insurance company wanted to exclude from coverage losses resulting from the negligence of third parties, it could have very readily framed the clause in such wise as to have done so. . . . If

15

there is an ambiguity in the language of the coverage, such ambiguity must be resolved against the insurance company that drafted the particular language in question, and in favor of the insured.").

Because we find that Appellants have met their burden of demonstrating an accidental and fortuitous loss under the Policy, the burden on remand shifts to National Union to establish the applicability of one or more of the Policy's exclusions. *See Nat'l Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc.*, 759 F.2d 873, 875 (11th Cir. 1985) ("Florida law is clear that 'once the insured establishes a loss apparently within the terms of an 'all risks' policy, the burden shifts to the insurer to prove that the loss arose from a cause which is excepted.'" (quoting *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. Dist. Ct. App. 1984)); *Phx. Ins. Co. v. Branch*, 234 So. 2d 396, 398 (Fla. Dist. Ct. App. 1970) ("[A]lthough the insured seeking to recover under an 'all risks' policy has the burden of proving that the insured property was lost or damaged and possibly that the loss was fortuitous, the rule is that once the insured establishes a loss apparently within the terms of the policy, the burden is upon the insurer to provide that the loss arose from a cause which is excepted." (citing *Jewelers Mut. Ins. Co. v. Balogh*, 272 F.2d 889 (5th Cir. 1959)))).

3.    Costs Order

Finally, Appellants assert that should they prevail on their appeal of the merits orders, the District Court's Order awarding National Union its taxable costs should also be reversed. Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Absent a contrary legislative directive, a 'prevailing party' is one who prevails on 'any significant issue' and thereby achieves some of the benefits sought by bringing suit." *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 307 F.3d 1318, 1322 n.4 (11th Cir. 2002) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989)); *see also Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 254 F.3d 987, 1012 (11th Cir. 2001) ("Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of [R]ule 54(d). . . ." (quoting *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995))). Because we hereby reverse the District Court's entry of summary judgment in favor of National Union, National Union is no longer the prevailing party for purposes of Rule 54(d)(1). *See Perez v. Miami–Dade Cnty.*, 186 F. App'x 936 (11th Cir. 2006). Accordingly, we vacate the District Court's award of costs in favor of National Union.

## III. CONCLUSION

17

Having found that Appellants met the requisite burden of demonstrating an accidental and fortuitous loss under the Policy, we therefore reverse the District Court's grant of summary judgment in favor National Union.  Accordingly, we hereby remand the matter to the District Court for further proceedings to determine the applicability, if any, of the Policy's exclusions.

REVERSED AND REMANDED.